# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joshua Payne,                                  :
                        Appellant              :
                                               :
            v.                                 :    No. 587 C.D. 2018
                                               :    Submitted: July 6, 2018
Scott Whalen                                   :
Adam S. Huber                                  :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                    **FILED:  April 25, 2019**


Appellant Joshua Payne (Payne) appeals, *pro se*, from an order of the Court of Common Pleas of Cumberland County (trial court), dated March 29, 2018. The trial court granted the motion for summary judgment filed by Scott Whalen (Whalen) and Adam Shane Huber (Huber) (collectively, Appellees) and denied Payne's motion for the same, thereby dismissing an amended complaint (Amended Complaint) filed by Payne.  For the reasons below, we affirm.

On May 1, 2014, Payne, an inmate then housed at the State Correctional Institution at Camp Hill (SCI-Camp Hill),[1] filed a complaint against Appellees and numerous other employees of SCI-Camp Hill (collectively, Department Defendants)

---

[1] It appears that Payne is now housed at the State Correctional Institution at Mahanoy (SCI-Mahanoy).

in their capacity as correctional officers employed by the Department of Corrections (Department). Payne asserted that Department Defendants negligently lost seven hundred family photos that he received in the mail. Department Defendants filed preliminary objections, raising the affirmative defense of sovereign immunity. The trial court sustained Department Defendants' preliminary objections and dismissed Payne's complaint with prejudice. Payne appealed to this Court, and we reversed, concluding that sovereign immunity did not apply to bar Payne's negligence claim. *See Payne v. Whalen* (Pa. Cmwlth., No. 2100 C.D. 2014, filed August 20, 2015).

Thereafter, Payne filed the Amended Complaint. In so doing, Payne named only Appellees as defendants. (Amended Complaint ¶¶ 1-2.) Payne also made the following factual averments. The Department has a policy that an inmate may not have more than ten publications or photographs in his cell at any given time. (*Id.* ¶ 10.) If an inmate receives additional publications or photographs when he already has ten inside his cell, the Department will confiscate them. (*Id.*) After confiscation, Huber maintains possession of the items, as he is the Special Management Unit's Property Officer. (*Id.* ¶¶ 10-11.) In addition to this policy, the Department has a Code of Ethics by which Department employees must abide.[2] (*Id.* ¶ 4.) The Code of Ethics provides, *inter alia*, that "[t]he personal property of inmates will be handle[d] with extreme care and disposed of only by properly designated authority in a manner designated by official [Department] policy." (*Id.* ¶ 5 (citing Department Code of Ethics).)

---

[2] We take judicial notice of the Department's Code of Ethics, which appears on the Department's official website at:

> https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/Code%20of %20Ethics.pdf.

(last visited March 21, 2019). *See Figueroa v. Pa. Bd. of Prob. & Parole*, 900 A.2d 949, 950 n.1 (Pa. Cmwlth. 2006) (taking judicial notice of information found on Department website).

2

Payne, while apparently already maintaining ten publications or photographs in his cell, received seven hundred photographs in the mail. (*Id.* ¶ 9.) Payne avers that Whalen ordered the confiscation of the photographs, after which time Huber maintained possession of them. (*Id.*) Thereafter, the photographs were lost, which Payne attributes to Huber's negligence. (*Id.* ¶¶ 8-10.) In support of this accusation, Payne attached a document entitled "Confiscated Items Receipt," which purports to show that a Department employee confiscated seven hundred photographs from Payne, on June 13, 2013, which were placed into property storage. (*Id.* at Exhibit A.)

In light of these averments, Payne alleged negligence against Appellees due to the loss of his photographs. (*Id.* ¶¶ 15-22.) Against Huber, Payne alleged that Huber owed a duty to Payne to exercise reasonable care over his property and failed to exercise such care in allowing the photographs to become lost. (*Id.* ¶¶ 15-16.) Against Whalen, Payne alleged that Whalen owed him a duty to appoint competent staff members to oversee his property, and Whalen breached that duty by appointing Huber as the Property Officer. (*Id.* ¶¶ 19-20.) Payne further alleges that Whalen knew or should have known that Huber's incompetence would render Huber incapable of performing the Property Officer's duties. (*Id.* ¶ 20.) Payne asserts that Appellees' negligence caused him physical and emotional harm. (*Id.* ¶¶ 17-18, 21-22.)

Thereafter, Appellees filed an Answer with New Matter. While Appellees admitted that they both worked as employees within the Special Management Unit at SCI-Camp Hill, they denied that Whalen ordered the confiscation of the photographs or that Huber confiscated and/or lost them. To that point, Appellees appeared to question the existence of the photographs and alleged

3

that Payne forged the Confiscated Items Receipt. Further, Appellees raised the defense of sovereign immunity and asserted that Payne failed to exhaust his administrative remedies.

Following discovery, the parties filed cross-motions for summary judgment. In Payne's motion, he argued that no dispute existed as to Appellees' confiscation and subsequent loss or destruction of his photographs and that no rational trier of fact could find in Appellees' favor. Conversely, Appellees asserted that they did not confiscate or lose Payne's photographs. Further, Appellees argued that sovereign immunity barred Payne's claim, as Payne did not assert that Appellees acted outside the course and scope of their employment and Payne's claim does not fit into one of the enumerated exceptions to sovereign immunity.

By opinion and order dated March 29, 2018, the trial court granted Appellees' motion, denied Payne's motion, and dismissed the Amended Complaint. In so doing, the trial court explained that Payne did not establish "a duty owed to him by [Appellees], and, therefore, [Appellees] are entitled to summary judgment." (Trial Court Opinion at 3.)[3] Payne now appeals the trial court's order.

On appeal,[4] Payne argues that the trial court erred or abused its discretion in granting Appellees' motion for summary judgment and denying his

---

[3] Additionally, the trial court's opinion states that Payne also alleged a breach of contract claim, and the trial court granted summary judgment in favor of Appellees on this claim as well. We note that the Amended Complaint did not include a breach of contract claim. Further, the trial court did not address the applicability of sovereign immunity.

[4] This Court's review of a trial court's order granting a motion for summary judgment is limited to considering whether the trial court erred as a matter of law or abused its discretion. *Lambert v. Katz*, 8 A.3d 409, 413 n.3 (Pa. Cmwlth. 2010), *overruled on other grounds by Cagey v. Commonwealth*, 179 A.3d 458 (Pa. 2018). A court may grant a motion for summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Bronson v. Horn*, 830 A.2d 1092, 1094 (Pa. Cmwlth. 2003), *aff'd*,

4

motion of the same. Payne maintains that he established *prima facie* evidence of Appellees' negligence as to survive a motion for summary judgment. Specifically, Payne asserts that he established that (1) Appellees owed him a duty to not negligently lose or destroy his property, and (2) Appellees breached that duty.

We begin by addressing Payne's first claim of error—that the trial court erroneously concluded that Appellees did not owe a duty to Payne. Payne, again citing the Department's Code of Ethics, argues that the record establishes that Appellees owed him a duty not to lose or destroy his property.

In order to maintain an action for negligence, one must prove: (1) the defendant had a duty or obligation recognized by law; (2) the defendant breached that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages. *Page v. City of Philadelphia*, 25 A.3d 471, 475 (Pa. Cmwlth. 2011), *appeal denied*, 40 A.3d 124 (Pa. 2012). "The question of whether a duty exists is purely a question of law." *Brown v. Dep't of Transp.*, 11 A.3d 1054, 1056 (Pa. Cmwlth. 2011).

Here, the trial court concluded that Payne failed to establish that Appellees owed a duty to Payne with respect to his personal belongings. Analogous jurisprudence from this Court, however, differs with the trial court's conclusion.

In *Samuels v. Walsh* (Pa. Cmwlth., No. 318 C.D. 2014, filed November 17, 2014),[5] an inmate (Samuels) filed a complaint against Department

---

848 A.2d 917 (Pa. 2004), *cert. denied*, 543 U.S. 944 (2004). The right to judgment must be clear and free from doubt. *Id.* In reviewing the granting of a motion for summary judgment, this Court must "view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Pappas v. Asbel*, 768 A.2d 1089, 1095 (Pa. 2001), *cert. denied*, 536 U.S. 938 (2002).

[5] Pursuant to Commonwealth Court Internal Operating Procedure § 414(a), 210 Pa. Code § 69.414(a), an unreported panel decision of this Court, issued after January 15, 2008, may be cited for its persuasive value.

employees for the negligent loss of personal property. In so doing, Samuels averred that he maintained personal property and legal documents in his cell. Later, Samuels was transferred to a Restricted Housing Unit (RHU) for a short time. Upon his return from the RHU, Samuels' property and documents were no longer in his cell. Samuels filed a complaint and alleged that the Department employees' negligence caused the loss of his personal property. Citing to the Department's internal policies, Samuels averred that the Department employees had a duty to safely secure his property. The Department employees filed preliminary objections, arguing, *inter alia*, that Samuels failed to state a claim for which relief may be granted. A court of common pleas sustained the Department employees' preliminary objections, and Samuels appealed. This Court reversed, opining that Samuels' complaint adequately alleged that "consistent with Department policies and regulations, [the Department employees] had a duty to secure and protect Samuels' property." *Samuels*, slip op. at 9.

We encountered a similar situation in *Palmer v. Doe* (Pa. Cmwlth., No. 2451 C.D. 2015, filed May 5, 2016). In *Palmer*, an inmate (Palmer) purchased two items—a lamp and typewriter ribbons—which he maintained in his cell. Thereafter, Palmer was transferred to the RHU for a short time. Upon his transfer from the RHU to a new cell, Palmer found that those items were missing from the rest of his personal belongings. Palmer filed a complaint sounding in negligence in which he alleged that Department employees failed to follow their own policy of properly inventorying and returning his personal property. A court of common pleas dismissed Palmer's complaint as frivolous, and Palmer appealed. This Court reversed, concluding that Palmer's complaint included sufficient facts and allegations such that the Department's policy imposed a duty upon the Department

employees to secure and protect inmate property. *Palmer*, slip op. at 10. In so doing, we cited to another unreported case, *Pelzer v. Pry* (Pa. Cmwlth., No. 50 C.D. 2012, filed May 15, 2013), wherein we reviewed a similar complaint and opined:

> In his [a]ction [the inmate] describes the [Department employees'] duties in their roles as property officers or security officers, which include transporting, receiving, inventorying, and searching inmate property at [the State Correctional Institution]. It is reasonable to infer that [the Department employees] are to perform these duties in a non-negligent manner. [The inmate] alleges that [the Department employees] negligently performed their work duties, thereby causing the loss or destruction of his property. We are satisfied that [the inmate's] allegations have sufficiently set forth the necessary elements for a negligence claim . . . .

*Pelzer*, slip op. at 11 (citations omitted).

Though the above cases are unreported, this Court appears to have adopted the logic espoused in *Palmer* in the reported decision of *Whitaker v. Wetzel*, 170 A.3d 568 (Pa. Cmwlth. 2017), where an inmate filed suit after Department employees confiscated and later destroyed pictures that were sent to him via mail. Notably, the inmate did not allege negligence but instead alleged constitutional violations. While noting that the inmate did not sufficiently claim constitutional violations, we explained that a claim in negligence could have been available to him if he pleaded accordingly. Specifically, we explained:

> While prisoners obviously surrender a great many rights benefitting society at large, they remain entitled to possess undisturbed the property to which they are permitted in their confined setting, subject to the appropriate rules of the penal institution. To the extent [the inmate] claims that the photographs were destroyed as a result of [the Department employees'] intentional acts, these claims are properly dismissed. However, had [the inmate] alleged that [the Department employees] acted negligently in protection of his property which was "in the

7

prison officials' care, custody and control," he would "not be precluded from pursuing [a] claim [for negligence]" against them. *Palmer*[, slip op. at 10].

. . . .

The [Department employees] at issue may (or may not) have been negligent in doing their job, but [the inmate's] filings cannot be read as alleging anything but the most devious conduct on their part, and certainly cannot be seen as claiming that he is victim of their negligence. In proceeding in this way, [the inmate] has foregone his opportunity to pursue an avenue which may have otherwise been open to him.

*Whitaker*, 170 A.3d at 574-75 (footnotes omitted) (internal citation omitted).

Here, the trial court provided no discussion regarding Appellees' duty to handle Payne's property in a non-negligent manner. The extent of the trial court's discussion on this matter includes one conclusory sentence: "[Payne] has not established a duty owed to him by [Appellees], and, therefore, [Appellees] are entitled to summary judgment." (Trial Court Opinion at 3.) As previously mentioned, however, the Department's Code of Ethics provides that "[t]he personal property of inmates will be handled with extreme care and disposed of only by properly designated authority in a manner designated by official [Department] policy." (Department Code of Ethics, at 3.) Upon review of the Amended Complaint and the jurisprudence highlighted above, we determine that Payne established that Appellees owed him a duty to "secure and protect" his property. *See Samuels*, slip op. at 9. Accordingly, we conclude that the trial court erred in determining that Appellees owed no duty to Payne with respect to his personal property.[6]

_____

[6] In their brief in support of their summary judgment motion, Appellees cited to *Tillman v. Pennsylvania Board of Probation and Parole* (Pa. Cmwlth., No. 575 M.D. 2011, filed February 22, 2013) for the proposition that the Department's Code of Ethics is an administrative

Although the trial court concluded that Appellees did not owe a duty to Payne, it concluded that even if a duty existed, Appellees did not breach that duty. To this point, the trial court opined:

> Even if [Payne] had established [that Appellees] owed a duty to him, [Payne] failed to establish a breach of duty occurred. [Payne's] deposition admits that: (1) [Payne] does not know if [Whalen] ever handled his personal property; (2) [Whalen] never personally confiscated anything from him[;] and (3) [Payne] never saw, counted, or had access to the 700 photographs at issue. [Payne] has offered no evidence supporting that [Huber] acted unreasonably or that he negligently handled the photographs.

(Trial Court Opinion at 3-4.)

In order to withstand a motion for summary judgment, a nonmoving party "must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor." *Ertrel v. Patriot-News Co.*, 674 A.2d 1038, 1042 (Pa.), *cert. denied*, 519 U.S. 1008 (1996). A non-movant's failure to adduce such evidence "establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* If a plaintiff fails to establish one of the essential elements of actionable negligence, the defendant has valid grounds for summary judgment. *Braxton v. Dep't of Transp.*, 634 A.2d 1150, 1158 (Pa. Cmwlth. 1993), *appeal denied*, 652 A.2d 1326 (Pa. 1994).

---

policy that does not create a right for a cause of action. To that point, we agree. This Court has held multiple times that a failure to comply with a Department policy is not a basis for a cause of action. *See, e.g.*, *Bullock v. Horn*, 720 A.2d 1079, 1082 n.6 (Pa. Cmwlth. 1998). This proposition, however, does not negate the fact that Appellees had a duty not to lose or destroy Payne's property through negligence. This proposition, although memorialized in the Department's Code of Ethics, could also stand independent of Payne's citation thereto. *See Whitaker*, 170 A.3d at 574-75.

Here, we agree with the trial court that Payne failed to establish that either Appellee breached his duty. During discovery, Appellees deposed Payne. During this deposition, Payne made a number of admissions. With respect to Whalen, Payne admitted that Whalen never confiscated anything from him, and he only brought suit against him because he enforced the Department's confiscation policy. Specifically, Payne's deposition testimony provided:

Q: All right. And you also sued [Whalen], W-H-A-L-E-N. Why did you sue him?

A: Because he was the one to enforce the practice of confiscating incoming magazines, books, and photographs.

Q: All right. Do you know if he ever handled your property—

A: No.

Q: —personally?

A: No.

Q: Did he ever confiscate anything from you?

A: No.

(Original Record (O.R.), Item 41, Exhibit A, at 35-36.) Payne made similar concessions with respect to Huber. After being asked if Huber took the photographs, Payne stated:

A: Yes, he's the one—I don't know, did he take the photographs, he gave me the confiscation slip. I don't know that he took the photographs. Whoever did the mail that day was the one that confiscated [them].

Q: Well, when he gave you the slip, did he say we're taking your photographs or I'm taking your photographs?

A: No, he never—he gave me a confiscation slip.

(*Id.* at 41.) Further, with respect to the Confiscated Items Receipt itself, Payne admits that he does not know who signed it. (*Id.* at 38.)

10

In attempting to establish Appellees' negligence, Payne failed to put forward any evidence that establishes either Whalen or Huber had any involvement in the negligent loss or destruction of his photographs. The extent of Payne's evidence is a Confiscated Items Receipt signed by an unknown actor. Although the Confiscated Items Receipt potentially establishes that an unknown Department employee confiscated Payne's photographs, Payne has put forward no evidence establishing that either Whalen or Huber participated in any way in the negligent loss or destruction thereof. Payne is merely relying on his allegation that Appellees were responsible for the loss of his photographs, but mere conclusory allegations in the pleadings are not sufficient to establish a breach of duty. *Hughes v. Council 13, Am. Fed. of State, Cty., & Mun. Emps., AFL-CIO*, 629 A.2d 194, 195 (Pa. Cmwlth.), *aff'd per curiam*, 640 A.2d 410 (Pa. 1994).

Moreover, Whalen cannot be liable based solely on his supervisory position. A negligence action may not lie against a public official if there is no averment that the individual committed a wrongful act in his official capacity or by his personal action, and the action is solely predicated upon a theory of *respondeat superior*. *See Witt v. Dep't of Banking*, 409 A.2d 932, 934 (Pa. Cmwlth. 1980), *aff'd per curiam*, 425 A.2d 374 (Pa. 1981). Specifically, "[c]onsistent with the interest in unimpaired decisionmaking, we believe it appropriate to protect from the possibility of suit a public servant who has not himself engaged in actionable conduct. Thus, those in the 'chain of command' should not be subject to suit on any theory of vicarious responsibility." *Id.* (quoting *DuBree v. Commonwealth*, 393 A.2d 293, 295 (Pa. 1978) (plurality)). Thus, the trial court correctly concluded that Appellees did not breach their duty owed to Payne.

11

Accordingly, the order of the trial court, granting Appellees' motion for summary judgment and denying Payne's motion of the same, is affirmed.[7]

_____
P. KEVIN BROBSON, Judge

_____

[7] As we have concluded that the trial court did not err or abuse its discretion in granting Appellees' motion for summary judgment, we conclude for the same reasons that the trial court did not err or abuse its discretion in denying Payne's motion of the same. As the trial court correctly determined that Payne did not establish that Appellees breached their duty owed to Payne, Payne's right to judgment was not clear and free from doubt, as is required for summary judgment. *See Bronson*, 830 A.2d at 1094.

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joshua Payne,                 :
           Appellant      :
                            :
          v.                :    No. 587 C.D. 2018
                            :
Scott Whalen                :
Adam S. Huber             :

# **O R D E R**

AND NOW, this 25th day of April, 2019, the order of the Court of Common Pleas of Cumberland County, granting the motion for summary judgment filed by Scott Whalen and Adam S. Huber and denying the motion for summary judgment filed by Joshua Payne, is AFFIRMED.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joshua Payne,        :
         Appellant      :
                           :    No. 587 C.D. 2018
       v.             :
                           :    Submitted: July 6, 2018
Scott Whalen                 :
Adam S. Huber            :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge


## *OPINION NOT REPORTED*

CONCURRING/DISSENTING OPINION
BY JUDGE McCULLOUGH                       FILED: April 25, 2019


       I concur with the Majority insofar as it affirms the order of the Court of Common Pleas of Cumberland County (trial court) granting the motion for summary judgment in favor of Scott Whalen. However, I respectfully disagree with the Majority to the extent it affirms the order of the trial court granting the motion for summary judgment in favor of Adam S. Huber.

       With respect to Huber, Joshua Payne (Appellant) specifically alleged in his amended complaint that the Department of Corrections (Department) had promulgated a Code of Ethics which required "[t]he personal property of inmates [to] be handle [sic] with extreme care and disposed of only by properly designated authority in a manner designated by official [Department] policy." (Amended Complaint ¶¶ 4-5.) Appellant also alleged that Huber, who served as the property

officer for the special management unit, failed to abide by this Code of Ethics and failed to exercise extreme care when he lost Appellant's personal photographs that were placed in his possession. (Amended Complaint ¶8.) Appellant stated that the Department maintains a policy limiting an inmate to no more than 10 publications or photographs in his cell at any given time, that any excess publications or photographs are confiscated upon arrival, and that Huber maintains possession of the items after confiscation consistent with his duties as property officer. (Amended Complaint ¶¶ 10-11.) Appellant further testified by way of deposition that Huber provided him with a confiscation slip relating to several hundred personal photographs that have gone missing. (Original Record, Item 41.)

While the Majority correctly notes that Appellant admitted in his deposition that he did not know if Huber had actually confiscated the photographs or signed the confiscation slip, I do not believe such admissions were sufficient to warrant the trial court's grant of summary judgment in Huber's favor, as the Majority so concluded. The Majority aptly describes the burden on a nonmoving party in order to withstand a motion for summary judgment, *i.e.*, he "must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor." *Ertel v. Patriot-News Co.*, 674 A.2d 1038, 1042 (Pa. 1996). Additionally, the failure to adduce such evidence "establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*

Here, the allegations of Appellant's amended complaint, coupled with his deposition testimony, establish that genuine issues of material fact remain as to whether or not Huber took possession of Appellant's personal photographs and whether he exercised the "extreme care" required by the Department's Code of

PAM - 2

Ethics relating to the handling of inmate property and/or properly disposed of the same. For these reasons, I would reverse the order of the trial court to the extent it granted summary judgment in Huber's favor.

_____<br>
PATRICIA A. McCULLOUGH, Judge